## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

### CASE NO.

KATRINA POPE,

                    **Plaintiff,**

**vs.**

**ROYAL CARIBBEAN CRUISES, LTD.,**
A Liberian Corporation, and
**ROYAL MEDIA PARTNERS, LLC, a**
Florida Limited Liability Company,

                    **Defendants.**

_____/

### COMPLAINT FOR DAMAGES

Plaintiff, **KATRINA POPE** ("Plaintiff"), through undersigned counsel, files this

Complaint for Damages against Defendant, **ROYAL CARIBBEAN CRUISES, LTD., a**

**Liberian Corporation** ("RCCL"), and Defendant, **ROYAL MEDIA PARTNERS, LLC, a**

**Florida Limited Liability Company** ("RMP") (RCCL and RMP are sometimes hereinafter

collectively referred to as "Defendants"), and alleges upon information and belief as

follows:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1.      This is an action for damages in excess of the jurisdictional limits of this

Court, exclusive of costs and interest.  This Court has jurisdiction based on Admiralty

jurisdiction conferred by 28 USC § 1333.

2. At all times material hereto, Plaintiff was and is a citizen of Australia. Plaintiff is over the age of eighteen (18) years old. Plaintiff intends to file a motion to proceed anonymously under a "Jane Doe" pseudonym in order to protect her confidentiality as a rape victim.

3. At all times material hereto, RCCL was and is a for-profit, foreign corporation, which is based in Miami, Florida and is conducting business in the State of Florida.

4. At all times material hereto, RMP was and is a for profit, Florida limited liability company, which is conducting business in the State of Florida.

5. Defendants have consented to jurisdiction and venue in this Court. RCCL requires in its contract of carriage that all cases filed by passengers be filed in this jurisdiction. Plaintiff does not have a copy of her contract of carriage; however, it is a standard passenger ticket issued by RCCL and, as such, Defendants are in possession of identical contracts of carriage.

6. At all times material hereto, Defendants personally or through an agent:

(a) Operated, conducted, engaged in and/or carried on a business venture in the State of Florida, and in particular in Miami-Dade County, Florida;

(b) Engaged in substantial business activity in the State of Florida, and in particular in Miami-Dade County, Florida;

(c) Operated vessels and provided vessels and personnel for cruises in the water of this state; and

2

(d)     Committed one or more acts as set forth in Florida Statute section 48.08 (1), 48.181, and 48.193, which submit the Defendants to jurisdiction and venue of this Court.

7.     At all times material hereto, RCCL transported fare paying passengers on cruises aboard the M/S ENCHANTMENT OF THE SEAS and other vessels.

8.     At all times material hereto, RCCL owned, operated, managed and/or controlled the M/S ENCHANTMENT OF THE SEAS and all appurtenances thereto.

9.     At all material times, RMP engaged in the business of travel retail, leasing space from, and contracting with RCCL to provide employees and operate retail stores aboard RCCL vessels, including the M/S ENCHANTMENT OF THE SEAS.

10.     At all material times hereto, Plaintiff was a fare paying passenger aboard the M/S ENCHANTMENT OF THE SEAS for the purpose of enjoying a vacation cruise.

11.     At all material times hereto, RCCL and RMP owed a duty to passengers, including Plaintiff, of using reasonable care under the circumstances in operating the business of the M/S ENCHANTMENT OF THE SEAS.

12.     As a common carrier, RCCL had a non-delegable duty to safely transport cruise passengers and to protect passengers from crew member assaults.  RCCL is strictly liable for crew member assaults on passengers. *See, Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891 (11th Cir. 2004).

13.     At all material times, RMP, was an on-board agent of RCCL and was under the control and direction of RCCL.  As the agent of a common carrier, RMP is strictly liable for assaults committed by RMP's employees on passengers. *See, Doe v. Celebrity Cruises,*

3

*Inc.,* 398 F. Supp. 3d 1109 (S.D. FL 2019); *Doe v. Carnival Corporation*, 472 F. Supp. 3d 1187 (S.D. FL 2020).

14. In November of 2019, Plaintiff boarded the *M/S Enchantment of the Seas* for the purpose of sailing on a vacation cruise.

15. Plaintiff shared a crew member cabin with her mother who was employed at the time as a crew member for RCCL.

16. On or about November 29, 2019, Plaintiff met crew member, Joshua Drillette (the "Assailant") on the cruise ship.

17. At all material times, the Assailant was a member of the crew of the *M/S Enchantment of the Seas*.

18. At all material times, the Assailant was employed by RMP as a gift shop employee.

19. On the evening of November 29, 2019, Assailant invited Plaintiff to his cabin on the cruise ship.

20. After Plaintiff entered the cabin of Assailant, she experienced a lack of consciousness and has limited recollection of the events which transpired during the evening of November 29, 2019 and the early morning hours of November 30, 2019.

21. Plaintiff recalls regaining consciousness early in the morning of November 30, 2019 after Assailant returned her to her mother's cabin.

22.    Plaintiff's mother observed that Plaintiff's eyes were rolling back into her head and she appeared confused and disoriented in the early morning hours of November 30, 2019. Plaintiff told her mother that she felt "dizzy" and "weird."

23.    As the day progressed, Plaintiff had a vague image of crew member Joshua Drillette on top of her, which she conveyed to her mother.

24.    When KATRINA POPE returned to her mother's cabin, she was not wearing a brassiere which, on information and belief, was later found in Assailant's cabin.

25.    On November 30, 2019, Plaintiff's mother advised RCCL's shipboard security personnel of her concern that Plaintiff had been a victim of sexual assault and had likely been given a date rape drug.

26.    A RCCL security officer took a video interview of Plaintiff at which time Plaintiff informed the officer that she was not intoxicated and did not feel the effects of being "hung over" and believed that she did not consume enough alcohol to be either intoxicated or hung over.

27.    Plaintiff explained to the RCCL security officer that she lost virtually all consciousness after entering Joshua Drillette's cabin until she was returned to her mother's cabin later the next morning.

28.    Later, on November 30, 2019, Plaintiff was interviewed by video a second time by employees of RCCL.  Plaintiff was interviewed by the RCCL staff captain, in the presence of the RCCL security officer and RCCL nurse.  Plaintiff was required to sit in a

small office facing two (2) male RCCL officers, the security officer and the staff captain, with a ship nurse by her side.  The nurse discouraged her from submitting to a forensic rape examination. The security officer was wearing a body camera which recorded all conversations and documented Plaintiff's reactions during the interview.  RCCL did not obtain Plaintiff's voluntary consent to record the interview.  The staff captain stated that he realized and understood that Plaintiff felt uncomfortable by being interviewed on camera but falsely told Plaintiff that it was allegedly required by RCCL's unspecified "protocols."  Plaintiff asked why she had to be interviewed in front of three RCCL employees.  The staff captain falsely told her that he had "procedures to follow" which required her to be questioned in such a setting.

29.     During the video conversations, the staff captain informed Plaintiff that Joshua Drillette had stated that he had "sexual intercourse" with her.  Plaintiff broke down in tears, openly sobbed and cried.

30.     The RCCL staff captain acknowledged several times that the rape "was not Plaintiff's fault."  The staff captain stated to Plaintiff that she "... obviously ... has no recollection of it ... obviously no consent ... we consider this a sexual assault ... it is considered a crime."

31.     Plaintiff placed her hands over her face and stated that she was in shock.

32.     After the recorded interview, RCCL purported to administer a date rape screening test to Plaintiff. RCCL knew that the test did not specifically document three of

the most common date rape drugs- ketamine, rohypnol or gamma-hydroxybutyrate (GHB). Tests for these date rape drugs are widely available but RCCL chose not to test for these substances.  Plaintiff's test showed positive for benzodiazepines.  RCCL's Medical staff failed to acknowledge that high levels of rohypnol can cause a positive benzodiazepine test.  RCCL falsely led Plaintiff to believe that she had not been given a date rape drug, when in fact RCCL completely failed to test for common date rape drugs.

33.     Many dozens of women are sexually assaulted on cruise ships operated by RCCL each year.  According to data maintained by the Department of Transportation in compliance with the Cruise Vessel Safety and Security Act of 2010 (46 USC § 3507) ("CVSSA"), RCCL reported to the Federal Bureau of Investigations ("FBI") that at least sixty-six (66) women were sexually assaulted on RCCL cruise ships during the three (3) year period from January of 2017 until the date of this subject rape.  At least twenty-nine (29) women were sexually assaulted in the one (1) year period immediately prior to this incident.

34.     As far back as 1999, RCCL studied the high number of sexual assaults of women which occurred on its fleet of cruise ships. RCCL hired two top notch firms to study the problem of sexual assaults on RCCL-owned cruise ships. The cruise line retained a consulting firm called "Sheridan, Swailes" to study the company's security systems. RCCL also retained a national recognized expert on sexual harassment issues, Dr. Kay

Krohne, who previously was a commanding officer at the Naval Training Station in San Diego.

35.     After conducting an extensive analysis of the RCCL fleet of cruise ships, these experts concluded that sexual misconduct occurred "frequently" during RCCL cruises. They attributed this problem to the fact that most crew members were not afraid of being arrested, much less convicted.  Dr. Krohne reported that the worst thing that could happen to a crew member who committed a crime on a RCCL cruise ship, was to be sent on a one way flight home. Dr. Krohne and the Sheridan, Swailes consulting firm recommended a number of changes to reduce incidents of sexual assaults of women on RCCL ships.  Upon receipt of the experts' findings and recommendations, RCCL disbanded its internal group which studied the problem and did not implement the recommended improvements.

36.     According to testimony of FBI officials before the United States Congress, the vast majority of shipboard sexual assaults are not prosecuted by law enforcement.  In 2010, the United States Congress enacted the CVSSA to protect the rights of passengers who are victims of crime on cruise ships.  In the relevant portions of Section 2 of the notes to the CVSSA, Congress found that:

> (8)     It is not known precisely how often crimes occur on cruise vessels or exactly how many people have disappeared during ocean voyages because cruise line companies do not make comprehensive, crime-related data readily available to the public.

> (9)     Obtaining reliable crime-related data from governmental sources can be difficult, because multiple countries may be involved when a crime occurs on the high seas, including the flag country for the vessel, the

country of citizenship of particular passengers, and any countries having special or maritime jurisdiction.

(10)     It can be difficult for professional crime investigators to immediately secure an alleged crime scene on a cruise vessel, recover evidence of an onboard offense, and identify or interview potential witnesses to the alleged crime.

(11)     Most cruise vessels that operate into and out of United States ports are registered under the laws of another county, and investigations and prosecutions of crimes against passengers and crew members may involve the laws and authorities of multiple nations.

37.     RCCL made an intentional decision not to warn or otherwise protect their female passengers, including Plaintiff, from the aforementioned dangers for business reasons in order to protect their marketing image when it knew that female passengers would be subjected to repeated incidents of sexual assault and battery by their employees.

38.     RCCL's conduct is not an isolated or singular affair, but is part of a pattern of intentional and calculated behavior which can be described in this community as being outrageous in nature.

39.     Defendants have agreed to extend the one (1) year statute of limitations period to file this lawsuit to the date of this filing.

**<u>COUNT I (RCCL)</u>**
**<u>STRICT LIABILITY FOR RAPE, SEXUAL ASSAULT AND BATTERY</u>**

40.     Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

41.     As a common carrier, RCCL owed a non-delegable duty to protect and safely transport Plaintiff during the subject cruise.  This non-delegable duty included the duty to protect Plaintiff from assaults by crew members.  *See, Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891 (11th Cir. 2004).

42.     The Assailant admitted to having intercourse with the Plaintiff.  During this time Plaintiff was not conscious and was unable to give consent.  RCCL's staff captain acknowledged that the intercourse was non-consensual.

43.     Assailant's non-consensual sexual assault and battery of Plaintiff constitutes a breach of RCCL's duty to protect Plaintiff from assaults by crew members, thereby rendering RCCL strictly liable for the damages caused by Assailant's willful, intentional and criminal conduct.

44.     As a direct and proximate result of the foregoing failure of the RCCL to safeguard the Plaintiff, Plaintiff has suffered damages which included bodily injury, pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against RCCL for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court.

## COUNT II (RMP)
## STRICT LIABILITY FOR RAPE, SEXUAL ASSAULT AND BATTERY

45.     Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

46.     During the subject cruise, RMP provided retail services to guest, such as Plaintiff on board the ship.  RMP entered into a contractual relationship with RCCL knowing that its employees would be crew members on a common carrier's ship and that its employees would have access to passengers on the common carrier's ship.  RMP acted as an onboard agent of RCCL and was under the control and direction of RCCL, and as such RMP owed Plaintiff the non-delegable duty to protect Plaintiff from assaults by crew members.  *See, Doe v. Celebrity Cruises, Inc.*,  398 F. Supp. 3d 1109 (S.D. FL 2019); *Doe v. Carnival Corporation*, 472 F. Supp. 3d 1187 (S.D. FL 2020).

47.     The Assailant admitted to having intercourse with the Plaintiff.  During this time Plaintiff was not conscious and was unable to give consent.  RCCL's staff captain acknowledged that the intercourse was non-consensual.

48.     Assailant's non-consensual sexual assault and battery of Plaintiff constitutes a breach of RMP's duty to protect Plaintiff from assaults by crew members, thereby rendering RMP strictly liable for the damages caused by Assailant's willful, intentional and criminal conduct.

49.     As a direct and proximate result of the foregoing failure of RMP to safeguard the Plaintiff, Plaintiff suffered damages which included bodily injury, pain and suffering,

disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against RMP for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court.

**COUNT III (RCCL)**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

50.     Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

51.     On the day following the rape, RCCL's shipboard personnel videotaped two interviews with Plaintiff.  RCCL failed to obtain Plaintiff's consent to the second videotaped interview.  In fact, RCCL's staff captain insisted that Plaintiff had no choice in the matter as recording interviews with rape victims was allegedly "protocol."  When Plaintiff then objected to having three RCCL personnel present at the interview, the staff captain falsely replied that this too was mandatory and required by RCCL "procedures."

52.     The RCCL staff captain admitted that he understood that Plaintiff was uncomfortable with the second interview but nevertheless proceeded to tell Plaintiff in front of two other RCCL employees while being videotaped that she had been raped.

53.     Prior to learning that Assailant had admitted to the rape, Plaintiff went to the ship's medical department for treatment.  The ship's nurse discouraged Plaintiff from undergoing a rape kit examination.

54.     In a note to the CVSSA, Congress recognized that "Passengers on cruise vessels have an inadequate appreciation of their potential vulnerability to crime while on ocean voyages, and those who may be victimized lack the information they need to understand their legal rights or to know whom to contact for help in the immediate aftermath of the crime."  46 USC Section 3507.

55.     RCCL failed to provide Plaintiff, a rape victim, with rape counseling as required by the CVSSA.  Instead, RCCL arranged for Plaintiff to be interrogated by a defense-oriented psychiatrist for purposes of defending RCCL's legal interests.

56.     To protect the rights of sexual assault victims, the CVSSA requires that "sexual assault examination and support information" be treated as confidential.  The CVSSA expressly provides that "*no medical information may be released to the cruise line or other owner of the vessel or any legal representative thereof without the prior knowledge and approval in writing of the patient*."

57.     As a condition to receiving treatment, RCCL required Plaintiff to execute a Consent for Medical Treatment.  Attached to this consent was a document entitled Consent to Share Medical Information ("Consent").  The Consent authorized release of health information including:

"all medical, treatment, and diagnostic records, charts, notes, correspondence, counseling or support services records for purposes of

- providing or obtaining medical care or advice or other assistance or services for me,

- complying with legal or other reporting obligations,

- prevent the spread of infectious diseases such as gastro-intestinal disease and/or

- investigating or evaluating any alleged or reported injury, loss, damage, crime and its or their causes or circumstances. 46 US Code Section"

The Consent authorizes release of the specified health information to the FBI, Centers for Disease Control "or any other national, state or local authority either in the U.S. or abroad, or any other person or entity as may be required by law." The Consent does not provide for release of information to cruise line attorneys, their agents  (RMP) or their agent's attorneys.

58.     The Consent conditions medical treatment upon execution of the Consent stating, "if you withhold or revoke your consent, the extent of medical treatment we provide may be limited." The Consent further attempts to circumvent the CVSSA by stating, "If there is another legal basis for processing, Royal Caribbean Cruises Ltd., and/or Celebrity Cruises Inc. reserve the right to process the data on such other legal basis."

59.     On information and belief RCCL shared Plaintiff's medical and other information protected under the CVSSA with its attorneys in order to assist RCCL in building a legal defense against the rape committed by its crew member.  On information

14

and belief, RCCL shared Plaintiff's medical and other information protected under the CVSSA with RMP and its attorneys in order to assist RCCL and RMP in building a legal defense against the rape committed by RMP's employee.

60.     The actions of RCCL violate the spirit, intent and language of the CVSSA, which is to protect the privacy of victims of sexual assault and to prevent cruise lines from gathering information under the guise of assisting the sexual assault victim and then using this information against the victim in subsequent litigation.

61.     Congress has recognized that sexual assaults routinely occur on cruise ships. Notwithstanding enactment of the CVSSA, these sexual assaults continue. RCCL reported that 29 sexual assaults occurred in the one-year prior to Plaintiff's rape.

62.     RCCL made an intentional decision not to warn or otherwise protect their female passengers, including Plaintiff, from the aforementioned dangers for business reasons in order to protect their marketing image when it knew that female passengers would be subjected to repeated incidents of sexual assault and battery by their employees.

63.     RCCL's conduct is not an isolated or singular affair, but is part of a pattern of intentional and calculated behavior which can be described in this community as being outrageous in nature.

64.     RCCL purported to administer a date rape screening test to Plaintiff RCCL knew that the test did not specifically test for three of the most common date rape drugs-ketamine, rohypnol or gamma-hydroxybutyrate (GHB). RCCL failed to advise Plaintiff of

15

this fact and discounted that the positive benzodiazepine test was caused by a high level of rohypnol. RCCL falsely led Plaintiff to believe that she had not been given a date rape drug when in fact she likely had been drugged.

65.    RCCL knows that allegations of rapes and date rape drugs are prevalent on its ships. Even knowing this, RCCL chooses not to procure and/or use specialized rape drug testing kits which are widely available.

66.    The above described actions of RCCL and RCCL's employees constitute an intentional infliction of emotion distress upon Plaintiff.

67.    Plaintiff's damages are the proximate result of separate and independent torts committed by RCCL and RCCL's employees, to wit:

(a)    RCCL's employee intentionally acted in a rude, insensitive and hostile manner toward Plaintiff, with the intention of causing Plaintiff to experience severe emotional distress;

(b)    RCCL deceived and coerced Plaintiff, a sexual assault victim into participating in a videotaped interview in front of three (3) RCCL crew members during which she was advised that she had been raped. The videotape was not for the protection or benefit of Plaintiff, but for the protection of RCCL's legal interests.

(c)    RCCL forced Plaintiff, a sexual assault victim, to sign the Consent, the purpose of which was to provide a means for RCCL to circumvent the protections given to sexual assault victims, like Plaintiff, under the CVSSA.

(d)    RCCL violated the CVSSA by disseminating information protected under the CVSSA to its attorneys, RMP and other third parties.

(e)    RCCL failed to disclose and warn Plaintiff of the real risks of being sexually assaulted aboard its ships. RCCL's intentionally and

deliberately concealed and suppressed the truth of prior incidents of sexual assault and battery and other criminal conduct committed by their male employees on female passengers for the purposes of promoting their product, protecting their marketing image, keeping their cabin occupancy rate up, and other objectives designed to further their financial objectives, at the expense of Plaintiff and other unsuspecting members of the traveling public; and

(f)    RCCL purported to administer a date rape screening test to Plaintiff knowing that the test did not test for the three most common date rape drugs- rohypnol, ketamine and GHB. Medical staff failed to acknowledge that high levels of rohypnol could have caused her positive benzodiazepine test. RCCL falsely led Plaintiff to believe that she had not been given a date rape drug when in fact she might have.

68.    RCCL's outrageous conduct proximately caused Plaintiff to experience severe and extreme emotional distress.

69.    As a direct result of RCCL's intentional infliction of emotional distress, Plaintiff suffered and will continue to suffer severe physical and psychological damages including, but not limited to, severe and extreme mental pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life. These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demand judgment against RCCL for compensatory and punitive damages, including costs, interest, and other relief deemed appropriate by the Court.

**COUNT IV (RCCL)**
**NEGLIGENT FAILURE TO PROMULGATE, TEACH OR ENFORCE RULES**
**PERTAINING TO CREW MEMBER INTERACTIONS WITH GUESTS**

70.     Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

71.     RCCL had the duty to exercise reasonable care under the circumstances to provide for the safety of its passengers. This duty included the obligation  to promulgate rules and procedures and train and supervise crew members such that passengers, like Plaintiff, would be safe from foreseeable and preventable sexual assault and batteries committed by crew members.

72.     During the course of the subject cruise, Plaintiff entered the crew quarters on multiple occasions with several different crew members on different days.  Plaintiff was never advised by any of these crew members, security staff or other ship board personnel that she was forbidden from entering this area.  Only after Plaintiff was advised of her rape, was Plaintiff advised by a security officer that she was not permitted in crew quarters.

73.     Throughout the cruise, Plaintiff accompanied various male and female crew members during activities on the ship, including visiting the crew bar, attending a crew party and visiting crew member cabins. Plaintiff was never advised by any of these crew members, security or other ship board personnel this violated ship non-fraternization policies.

18

74.     On the evening of the rape, Assailant had invited Plaintiff to attend a ship board karaoke event.  The Assailant never advised Plaintiff that attending this event together would violate ship non-fraternization policies.

75.     Plaintiff's experience during the cruise demonstrates that shipboard rules pertaining to crew member interactions with guests were either non-existent or not enforced.  Whatever such rules may have existed, they were "honored in the breach."

76.     RCCL failed, and was negligent in one or more of the following  respects:

(a)     Failing to have an adequate system in effect to prevent passengers from being sexually assaulted and battered by crew members;

(b)     Failing to promulgate rules or policies designed to safeguard and protect passengers from sexual assaults and batteries committed by crew members, including non-fraternization rules prohibiting crew members from having contact and interaction, including sexual relations, with passengers;

(c)     Failing to adequately train its crew members regarding rules and policies meant to safeguard and protect passengers from sexual assaults and batteries;

(d)     Failing to adequately supervise and monitor its crew members to ensure their adherence to rules and policies meant to safeguard and protect passengers from sexual assaults and batteries;

(e)     Hiring a limited number of inexperienced or non-experienced security personnel unqualified to monitor and supervise crew member interactions with passengers;

(f)     Failing to provide an adequate number of security personnel and supervisory personal on aboard the vessel to monitor crew members;

(g)     Performing inadequate security checks of the crew member areas to prevent passengers from entering crew areas;

19

(h)     Failing to equip the vessel with video and security monitoring of crew member areas;

(i)     Failing to discipline crew members who violate rules designed to safe guard passengers and prevent sexual assaults and batteries, thereby creating an atmosphere where crew members know they will be held accountable for violation of these rules; and

(j)     Failing to adequately screen crew members, or otherwise conduct adequate background checks on its crew members, to prevent the hiring of sexual predators who prey on unsuspecting passengers.

77.     Employees of RMP acted as the on board agents of RCCL and were under the direct control and supervision of RCCL.  Employees of RMP, such as Assailant, were crew members on RCCL's vessel.  Pursuant to the doctrine of *respondeat superior*, RCCL is liable for any negligence that may be attributable to any of it's crew members who contributed to Plaintiff being sexually assaulted and battered on RCCL's cruise ship.

78.     As a direct and proximate result of the foregoing negligence of the RCCL , Plaintiff suffered damages which included bodily injury, pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against RCCL for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court.

## COUNT V (RMP)
## NEGLIGENT FAILURE TO PROMULGATE, TEACH OR ENFORCE RULES PERTAINING TO CREW MEMBER INTERACTIONS WITH GUESTS

79.     Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

80.     RMP had the duty to exercise reasonable care under the circumstances to provide for the safety of its passengers. This duty included the obligation to promulgate rules and procedures and train, monitor and supervise its employees, who were crew members, such that passengers, like Plaintiff, would be safe from foreseeable and preventable sexual assault and batteries.

81.     During the course of the subject cruise, Plaintiff entered the crew quarters on multiple occasions with several different crew members on different days.  Plaintiff was never advised by any of these crew members, security staff or other ship board personnel that she was forbidden from entering this area.  Only after Plaintiff was advised of her rape, was Plaintiff advised by security that she was not permitted in crew quarters.

82.     On the evening of the rape, Plaintiff accompanied the Assailant to his cabin in the crew quarters to allegedly drop off retail merchandise.  The Assailant made no mention of Plaintiff not being allowed to accompany him.

83.     Throughout the cruise, Plaintiff accompanied various male and female crew members during activities on the ship, this included visiting the crew bar, attending a crew

party and visiting crew cabins.  Plaintiff was never advised by any of these crew members, security or other ship board personnel this violated ship non-fraternization policies.

84.     On the night of the rape, Assailant had invited Plaintiff to attend a ship board karaoke event.  The Assailant never advised Plaintiff that attending this event together would violate ship non-fraternization policies.

85.     Plaintiff's experience during the cruise demonstrates that shipboard rules pertaining to crew member interactions with guests were either non-existent or not enforced.  Whatever such rules may have existed they were "honored in the breach."

86.     RMP failed, and was negligent in one or more of the following  respects:

(a)     Failing to have an adequate system in effect to prevent passengers from being sexually assaulted and battered by its crew members;

(b)     Failing to promulgate rules or policies designed to safeguard and protect passengers from sexual assaults and batteries committed by crew members, including non-fraternization rules prohibiting crew members from having contact and interaction, including sexual relations, with passengers;

(c)     Failing to adequately train its crew members regarding rules and policies meant to safeguard and protect passengers from sexual assaults and batteries;

(d)     Failing to adequately supervise and monitor its crew members to ensure their adherence to rules and policies meant to safeguard and protect passengers from sexual assaults and batteries;

(e)     Failing to provide an adequate number of supervisory personnel on aboard the vessel to monitor crew members;

(f)     Failing to discipline crew members who violate rules designed to safe guard passengers and prevent sexual assaults and batteries, thereby

creating an atmosphere where crew members know they will be held accountable for violation of these rules; and

(g)   Failing to adequately screen crew members, or otherwise conduct adequate background checks on its crew members, to prevent the hiring of sexual predators who prey on unsuspecting passengers.

87.   Pursuant to the doctrine of *respondeat superior*, RMP is liable for any negligence that may be attributable to any of it's employees who contributed to Plaintiff being sexually assaulted and battered on RCCL's cruise ship.

88.   As a direct and proximate result of the foregoing negligence of RMP, Plaintiff suffered damages which included bodily injury, pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff demands judgment against RMP for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court.

### COUNT VI (RCCL)
### NEGLIGENT FAILURE TO PROVIDE SECURITY

89.   Plaintiff re-adopts and re-alleges paragraphs 1 through 39, and further alleges as follows:

90.     RCCL had the duty to exercise reasonable care under the circumstances to provide for the safety of its passengers. This duty includes the obligation to provide reasonable and adequate security to protect Plaintiff from the dangers of being sexually assaulted and battered on board RCCL's ships.

91.      Congress has recognized that sexual assaults routinely occur on cruise ships. Notwithstanding enactment of the CVSSA, these sexual assaults continue.  RCCL reported that 29 sexual assaults occurred in the year prior to Plaintiff's rape.

92.     Notwithstanding RCCL's awareness of the frequency of sexual assaults, RCCL failed to implement reasonable and appropriate security measures to prevent these assaults.

93.     During the course of the subject cruise, Plaintiff entered the crew quarters on multiple occasions with several different crew members on different days.  Plaintiff was never advised by any of these crew members, security staff or other ship board personnel that she was forbidden from entering this area.  Only after Plaintiff was advised of her rape, was Plaintiff advised by security that she was not permitted in crew quarters.

94.     Throughout the cruise, Plaintiff accompanied various male and female crew members during activities on the ship, this included visiting the crew bar, attending a crew party and visiting crew cabins.  Plaintiff was never advised by any of these crew members, security or other ship board personnel this violated ship non-fraternization policies.

95.     Security was unaware or failed to enforce rules prohibiting Plaintiff from entering the crew areas of the ship.

24

96.     Security was unaware or failed to enforce non-fraternization policies applicable to Plaintiff's interaction with crew members.

97.     RCCL failed, and was negligent in one or more of the following respects:

(a)     By hiring inexperienced or non-experienced security personnel;

(b)     By failing to provide an adequate number of security personnel and supervisory personnel on aboard the vessel;

(c)     By performing inadequate security checks of the premises;

(d)     By failing to equip the vessel with video and security monitoring of areas where passengers have been and will be assaulted and battered;

(e)     By failing to equip the vessel with video and security monitoring of areas where passengers have been and will be assaulted and battered; and

(f)     By failing to promulgate, teach and/or enforce rules pertaining to crew member interactions with passengers.

(g)     By failing to train, supervise, or discipline the employee in question;

98.     As a direct and proximate result of the foregoing negligence of the RCCL, Plaintiff suffered damages which included bodily injury, pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiffs demands judgment against RCCL for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court, attorney fees where permitted by rule or statute, and trial by jury of all issues so triable.

## COUNT VII
## NEGLIGENT FAILURE WARN AS TO RCCL

99.     Plaintiff re-adopt and re-allege paragraphs 1 through 39, and further alleges as follows:

100.    RCCL had the duty to exercise reasonable care under the circumstances to provide for the safety of its passengers. This duty included the obligation warn Plaintiff of the real dangers of being sexually assaulted and battered on board RCCL's ships.

101.    Congress has recognized that sexual assaults routinely occur on cruise ships. Notwithstanding enactment of the CVSSA, these sexual assaults continue.  RCCL reported that 29 sexual assaults occurred in the year prior to Plaintiff's rape.  Notwithstanding RCCL's awareness of the frequency of sexual assaults, RCCL chooses to protect its public image and business model by not warning passengers of this risk.

102.    RCCL made an intentional decision not to warn or otherwise protect their female passengers of the aforementioned dangers for business reasons in order to protect their marketing image when it knew that female passengers would be subjected to repeated incidents of sexual assault and battery by their employees in the future.

103.    RCCL's conduct is not an isolated or singular affair, but is part of a pattern of outrageous behavior.

104.   Plaintiff was never warned by RCCL of the dangers of being raped aboard RCCL's ship.

105.   RCCL failed, and was negligent in one or more of the following respects:

(a)   By failing to adequately warn passengers aboard RCCL's vessels that there are real and significant dangers aboard the vessel, including the fact that other passengers have been sexually assaulted and battered by crew members, and by failing to advise passengers that a heightened degree of care should be exercised when dealing with the crew members aboard the vessel;

(b)   By deliberately creating an environment whereby passengers would be deceived into believing that they are in a safe and friendly "family" environment where it is safe to interact with male crew members where, in reality, passengers are at risk of being targeted and attacked by sexual predators;

(c)   By covering up prior incidents of sexual harassment and sexual assault and battery aboard RCCL's vessels, thereby preventing the public from gaining knowledge regarding potential dangers aboard RCCL's vessels regarding sexual assaults;

(d)   By failing to investigate similar incidents on its vessels;

(e)   By failing to implement policies or procedures to track prior instances of sexual assaults so that the environment which permits and encourages such behavior can be identified and eliminated and/or passengers could be warned of the dangers posed to their health and physical and mental well being;

(f)   By concealing, suppressing, and mis-characterizing information involving prior incidents where passengers are victimized aboard RCCL's vessels;

(g)   By refusing to report and/or under-reporting incidents involving sexual harassment and/or sexual assault and battery to the FBI and other law enforcement authorities;

27

(h) By mis-characterizing the incidents involving sexual harassment and/or sexual assault and battery to the FBI and other law enforcement authorities and, in particular, minimizing the crimes by mis-labeling the incidents (such as writing them off as an "inappropriate touch" or a "cultural misunderstanding") in a conscious effort to dissuade the FBI from taking the crimes seriously and boarding the cruise ships to investigate the crimes; and

(i) By protecting RCCL's business interests and media image at the expense of the fundamental rights of the passengers and other members of the public who will be subjected to sexual assault and battery and otherwise victimized in the future.

106. As a direct and proximate result of the foregoing negligence of the RCCL , Plaintiff suffered damages which included bodily injury, pain and suffering, disability, mental anguish, emotional trauma, loss of capacity for the enjoyment of life, embarrassment, expense of medical care and treatment, medication, counseling, lost wages, loss of ability to earn money, aggravation of a pre-existing condition, and loss of the ability to lead a normal life.  These losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiffs demands judgment against RCCL for compensatory damages, including costs, interest, and other relief deemed appropriate by the Court.

Dated: October 26, 2021                           Respectfully submitted,

Miami, Florida                                    */s/ James M. Walker*
                                                  James M. Walker
                                                  Florida Bar No. 755990
                                                  WALKER & O'NEILL, P.A.
                                                  Attorney for Plaintiffs
                                                  7301 S.W. 57 Court, Suite 430
                                                  South Miami, Florida 33143

Tel. No.        (305) 995-5300
Facsimile:     (305) 723-7770
jim@cruiselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices of Electronic Filing.

*/s/ James M. Walker*
James M. Walker (755990)

## SERVICE LIST

| | |
|---|---|
| Amanda Campos, Esq. | James M. Walker, Esq. |
| *Counsel for Defendant,* | *Counsel for the Plaintiff* |
| *Royal Caribbean Cruises, Ltd.* | Walker & O'Neill, P.A. |
| Royal Caribbean Cruises, Ltd. | 7301 S.W. 57th Court, Suite 430 |
| 1050 Caribbean Way | South Miami, Florida 33143 |
| Miami, Florida 33132-2096 | Telephone: (305) 995-5300 |
| Telephone: (305) 539-4331 | Facsimile:   (305) 723-7770 |
| Facsimile:   (305) 539-6561 | **Email: jwalker@cruiselaw.com** |
| Email: **acampos@rccl.com** | |
| | |
| Jonathan H. Dunleavy, Esq. | |
| *Counsel for Defendant,* | |
| *Royal Media Partners, LLC* | |
| Hamilton, Miller & Birthisel, LLP | |
| 150 S.E. 2nd Avenue, Suite 1200 | |
| Miami, Florida 33131-2332 | |
| Telephone: (305) 379-3686 | |
| Facsimile:   (305) 379-3690 | |
| Email: **jdunleavy@hamiltonmillerlaw.com** | |

29